UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEAN HENDERSON, as next friend of and for CHRISTOPHER DEVONTE HENDERSON, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| HARRIS COUNTY, TEXAS; and ARTHUR SIMON GARDUNO, | § § § | |
| Defendants. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

> **Harris County Deputy Constable Art Garduno shot a Taser at and disabled Chris Henderson, even though Chris was standing still, had his hands up and out, was not fleeing, was not a danger to anyone, and had not been suspected of a serious crime. Christopher fell backward, like a falling tree, slammed his head to concrete, and suffered a severe traumatic brain injury. This was clear, unadulterated excessive force and a seizure in violation of Chris's clearly-established constitutional rights.**



Table of Contents

I.      Introductory Allegations ................................................................................ 3

        A.      Parties.............................................................................................3

        B.      Jurisdiction.....................................................................................4

        C.      Venue .............................................................................................5

II.     Factual Allegations ....................................................................................... 5

        A.      Introduction ....................................................................................5

        B.      Chris Henderson..............................................................................5

        C.      Deputy Garduno Unreasonably and Unnecessarily Tazes Chris ................6

        D.      TCOLE Records of Deputy Garduno's Training............................9

        E.      Chris Suffered a Severe Brain Injury as a Result of the Unlawful
                Tazing .........................................................................................10

        F.      *Monell* Liability .............................................................................11

                1.   Constable Trevino Failed to Implement any Written Policies
                     and/or Procedures..................................................................... 11

                2.   Constable Trevino Failed to Appropriately Train and/or
                     Supervise Deputy Garduno ................................................... 12

III.    Causes of Action ......................................................................................... 13

        A.      Cause of Action Against Arthur Simon Garduno Under 42 U.S.C. §
                1983 for Violation of 4th Amendment Rights .............................13

        B.      Cause of Action Against Harris County Under 42 U.S.C. § 1983 for
                Violation of 4th Amendment Rights..........................................15

IV.     Concluding Allegations ............................................................................. 17

        A.      Conditions Precedent ....................................................................17

        B.      Use of Documents.........................................................................17

        C.      Jury Demand .................................................................................17

        D.      Prayer ...........................................................................................17

TO THE HONORABLE UNITED STATES DISTRICT COURT:

The Plaintiff files this complaint and for cause of action will show the following.

I.       Introductory Allegations

         A.       Parties

1.       Plaintiff Jean Henderson ("Ms. Henderson"), as well as Christopher Devonte Henderson ("Chris"), are both natural people who reside and did reside and were domiciled in Texas at all relevant times.  Ms. Henderson is Chris's legal and biological grandmother, and she raised him from the time he was approximately four years of age.  Ms. Henderson brings this case as next friend for, and on behalf of, Chris due to Chris still suffering from a severe traumatic brain injury occurring as a result of the Defendants' actions, inaction, practices, policies, procedures, and/or customs.

2.       Defendant Harris County, Texas ("Harris County") is a Texas county.  Harris County may be served with process pursuant to Federal Rule of Civil Procedure 4(j)(2) by serving its chief executive officer, County Judge Ed Emmett, at Harris County Administration Building, 1001 Preston, Suite 911, Houston, Texas 77002, or wherever Honorable Judge Emmett may be found.  Service on such person is also consistent with the manner prescribed by Texas law for serving a summons or like process on a county as a defendant, as set forth in Texas Civil Practice and Remedies Code Section 17.024(a).  Harris County acted or failed to act at all relevant times through its policymakers, chief policymakers, employees, agents, representatives, and/or law enforcement personnel and is liable for such actions and/or failure to act to the extent allowed by law (including but not necessarily limited to law applicable to claims pursuant to 42 U.S.C. § 1983).

3.     Defendant Arthur Simon Garduno ("Deputy Garduno" or "Mr. Garduno") is a natural person who resides at and may be served with process at 5801 Cochran Street, Houston, Texas 77009.  Deputy Garduno is also known as Art S. Garduno.  Deputy Garduno may also be served with process at his place of employment, Harris County Constable Precinct 6, 5900 Canal Street, Houston, Texas 77011.  Deputy Garduno may also be served with process wherever he may be found or, pursuant to Federal Rule of Civil Procedure 4(e), by leaving a copy of this complaint and a summons directed to Deputy Garduno at Deputy Garduno's dwelling or usual place of abode with someone of suitable age and discretion who resides there.  Deputy Garduno is being sued in his individual capacity and acted at all relevant times under color of state law. Deputy Garduno was employed by and/or was the agent and/or designee and/or contractor of and for Harris County at all such times and acted or failed to act in the course and scope of his duties for Harris County.

B.     Jurisdiction

4.     The court has original subject matter jurisdiction over this lawsuit according to 28 U.S.C. §§ 1331 and 1343(4), because this suit presents a federal question and seeks relief pursuant to federal statutes providing for the protection of civil rights.  This suit arises under the United States Constitution and a federal statute including but not necessarily limited to 42 U.S.C. § 1983. The Plaintiff does not, by including the following sentence, assert, stipulate to, or allege any state law claims.  However, to the extent any such claims are alleged or construed to be alleged in this pleading, the court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. § 1367(a) due to them being so related to the claims within the court's original jurisdiction that they and the claims within the court's original jurisdiction arise from a common nucleus of operative fact and form part of the same case or controversy under Article III of the United States Constitution.

5.     The court has personal jurisdiction over Harris County because it is a Texas County. The court has personal jurisdiction over the natural person defendant because he resides in and is a citizen of Texas.

C.     Venue

6.     Venue is proper in the Houston Division of the United States District Court for the Southern District of Texas, pursuant to 28 U.S.C. § 1391(b)(2), because it is the division in the district in which a substantial part of the events or omissions giving rise to claims asserted in this pleading occurred.


II.     Factual Allegations

A.     Introduction

7.     The Plaintiff provides in the factual allegations sections below the general substance of certain factual allegations.  The Plaintiff does not intend that those sections provide in detail, or necessarily in chronological order, any or all allegations.  Rather, the Plaintiff intends that those sections provide the Defendants sufficient fair notice of the general nature and substance of the Plaintiff's allegations, and further demonstrate that the Plaintiff's claim(s) have facial plausibility.  Whenever the Plaintiff pleads factual allegations "upon information and belief," the Plaintiff is pleading that the specified factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

B.     Chris Henderson

8.     Christopher Devonte Henderson was born in Houston, Texas.  Jean Henderson and her late husband raised Chris from the time he was approximately 4 years of age.  Chris graduated from Girls & Boys Preparatory Academy in Houston, Texas.

C.   Deputy Garduno Unreasonably and Unnecessarily Tazes Chris

9.      On or about April 26, 2018, Chris was at a park within walking distance of the Houston, Texas apartment in which he lived with his grandmother and one of his uncles.  Upon information and belief, a police officer believed that Chris possessed marijuana, and he intended to question Chris about it.  Possession of a small amount of marijuana is no longer considered to be a serious crime in the United States, and there are many jurisdictions, including some in Texas, in which a person will simply receive a citation and not be arrested for such possession.

10.     Upon information and belief, Chris, realizing what was going to occur, moved and/or jogged toward his apartment.  Chris did not display a knife, a gun, or any other weapon.  In fact, Chris did not possess any weapon and/or indicate that he intended to harm himself or others at that time or any other time relevant to this case.  Chris never made any movements towards anyone, said anything, or did anything that indicated that he intended to harm anyone, including but not limited to Deputy Garduno.

11.     Upon information and belief, Deputy Garduno either began pursuing Chris at or near the park or, in the alternative, near the time Chris reached buildings in the apartment complex in which he lived.  Deputy Garduno pursued Chris from behind.  Deputy Garduno called out in substance, "Stop! Stop, or I'll Taze you!"  Deputy Garduno then fired his Taser.  Upon information and belief, one of the electrodes hit a parked truck, and another electrode may have hit Chris.  Upon information and belief, Chris may have made a noise as a result of being hit by one of the electrodes.  Chris stopped either just before Deputy Garduno shot the Taser this first time, or Chris stopped sometime between the time period beginning just before Deputy Garduno shot the Taser this first time and ending shortly after Deputy Garduno shot the Taser this first time.  Regardless, Chris stopped and surrendered at or near the time of the first Taser shot.

12.      Chris put his hands up and out, was no longer walking or running, and would appear to any person at the scene to be doing exactly what he was doing – no longer fleeing. Even through Chris was no longer fleeing, not displaying any weapon, not threatening anyone, not appearing to threaten anyone, and not accused of a serious crime, Deputy Garduno chose to shoot his Taser at Chris a second time.  There was absolutely no reason for Deputy Garduno to shoot at Chris a second time.

13.      Chris looked winded or as if he had lost his energy by the time he had stopped, before Deputy Garduno chose to shoot his Taser at Chris a second time.  Upon information and belief, before Deputy Garduno shot a second time, he took time to reload his Taser.  One or more electrodes then hit Chris, while he was standing still, surrendered, and with his hands up and out. The palms of Chris's hands were open.  Chris's body appeared to jolt, and it bowed out toward the front.  His arms moved roughly straight down to his sides, and he fell backward to the concrete as if he were a tree falling after being cut down in a forest.

14.      The first part of Chris's body to hit the concrete was his head.  One witness described the manner in which Chris fell as that depicted in an iced tea commercial when a person is falling at summer camp, straight back, into a swimming pool.  One witness described the sound of Chris's head hitting the concrete as being like the sound of a 50-pound dumbbell being dropped to the ground.  Chris was bleeding out of his ears, nose, and/or mouth, thus indicating the severity of his head injury.  It was light outside, and Deputy Garduno had no issue or problem seeing Chris. Deputy Garduno knew that Chris had his back to Deputy Garduno, had surrendered, and was not fleeing.

15.      Witnesses thought that Chris, who was 24-years-old, could be as young as 14–18 years of age.  They viewed Chris as a skinny "kid," who was doing nothing really wrong, and who

had been shot with a Taser for no reason.  Chris did not look like he was trying to grab a weapon.

Chris did not act aggressively toward the officer.  Chris did not act aggressively toward anyone at

the scene.  Chris did not act like he was going to flee.

16.     After Chris hit the ground, he started shaking.  Upon information and belief, the

shaking was due to the severe traumatic brain injury that Chris had just suffered.  Amazingly,

Deputy Garduno told Chris in substance to stop or he was going to "hit him" again with the Taser.

17.     More officers arrived, and one of them said in substance, "Well the reason we was

chasing after him was because he was in a drug – free zone doing drugs.  And paramedics seemed

to believe he was on Kush."  One of the witnesses then asked in substance, "Ain't that potpourri?"

The officer then responded in substance, "Yeah."  One of the witnesses then asked in substance,

"How is it illegal if you can buy that at the gas station?"  Regardless of what was said, it was clear

to Deputy Garduno and other law enforcement officers that appeared at the scene that Chris had

not been suspected of engaging in any serious crime – certainly not one serious enough to shoot a

Taser at him when he was standing still, surrendered, and demonstrating no intent or ability to

harm anyone else at the scene.  Witnesses viewed Chris as in substance a skinny little kid, further

demonstrating his lack of apparent aggressiveness and/or ability to cause anyone serious harm.

18.     Deputy Garduno, instead of shooting Chris, could have ordered him to drop to his

knees.  Deputy Garduno could have ordered Chris to lay down.  Deputy Garduno could have

ordered Chris to put his hands behind his back to be cuffed.  Instead, Deputy Garduno chose to

shoot his Taser at an unarmed suspect, who was not resisting arrest, who was not fleeing, and who

was not aggressive toward anyone.

19.     One of the other officers who showed up, after being told by a witness that Chris

needed to be checked out because he had hit his head really hard, said in substance, "Back up.

Back up, or I'll arrest you." The witness responded in substance, "Man, you can't do that. I am trying to tell you that man just busted his head." The officer then responded in substance, "Get away. I will arrest your ass. I ain't gonna tell you again." Officers seemed to show little concern whatsoever for Chris's well-being.

20.     Deputy Garduno knew that he should not have shot his Taser at Chris a second time, because Chris was not suspected of a serious crime, was not fleeing, and did not pose a serious risk to the health or safety of anyone, including but not limited to Deputy Garduno. Deputy Garduno subjectively intended the action which he took, which was objectively unreasonable. Deputy Garduno showed deliberate indifference and conscious disregard to Chris's constitutional rights, and he knew, as all reasonable officers would have known at the time, that shooting a Taser at Chris was a violation of Chris's clearly-established constitutional rights. Deputy Garduno was supposed to protect and serve. Instead, upon information and belief - out of anger and frustration - he chose to seriously harm Chris and intended that the result actually occur. Deputy Garduno's actions and inaction caused, proximately caused, and were producing cause of Chris's damages.

### D.     TCOLE Records of Deputy Garduno's Training

21.     Deputy Garduno had approximately 4 years, 11 months of non-contiguous work as a Texas peace officer at the time he chose to shoot Chris. The Texas Commission on Law Enforcement ("TCOLE") keeps, upon information and belief, a complete record of all law enforcement education which Deputy Garduno completed. TCOLE records indicate that Deputy Garduno completed a course entitled "Less Lethal Electronic Control Device Training" on or about July 25, 2017. The course was comprised of 8 hours of training. Upon information and belief, Deputy Garduno would have learned that he should have never shot a Taser into the back of

someone who is standing still, surrendered, and who might fall to concrete or another hard surface after being Tazed.  Deputy Garduno's decision to do so, to Chris, constituted gross negligence.

22.     Further, upon information and belief, years ago – on or about October 24, 2009 – Deputy Garduno took a class entitled "Less Lethal Chemical Weapons Training."  He thus was aware of other means to subdue Chris, aside from use of a Taser.  It would have likewise been objectively unreasonable for Deputy Garduno to have used chemical weapons on Chris.  In fact, it would have been unreasonable for Deputy Garduno to use any weapons on Chris at that time.

### E.     Chris Suffered a Severe Brain Injury as a Result of the Unlawful Tazing

23.     Chris suffered a severe brain injury as a result of being shot with a Taser.  Chris was initially hospitalized from approximately April 26, 2018 through June 13, 2018.  Chris suffered a severe traumatic brain injury, and hospital personnel had to significantly sedate him (using the term as it is commonly understood) due to brain swelling and the risk that Chris would suffer further brain damage if he were allowed to remain as conscious as his body would allow.

24.     Chris was subjected to a craniectomy, which is a surgery to cut a bone out of Chris's skull to create an opening to access his brain.  Upon information and belief, the piece of Chris's skull that was removed will not be surgically implanted again, and thus put back into its original anatomical position, for several months after the craniectomy surgery.

25.     Further, even though Chris was discharged from the hospital on or about June 13, 2018, he was discharged in a manner requiring significant care at home.  Further, upon information and belief, Chris's brain will never be the same as it was prior to being shot by Deputy Garduno. Chris will likely need some form of care, treatment, and/or accommodation for the rest of his life. It is too early at the time this pleading is to be filed to determine the long-term effects on Chris of the severe traumatic brain injury.

F.      *Monell* Liability

26.      Upon information and belief, Harris County is liable for all damages suffered by Chris and referenced in this pleading pursuant to *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978) and its progeny.  Such liability arises due to the action and/or inaction of the chief policymaker for Harris County regarding material issues in this case.  The chief policymaker was the Constable of Precinct 6, Silvia R. Trevino (or her predecessor and/or successor).  Harris County's action and inaction otherwise referenced in this pleading, related to damages suffered by Chris, and its policies, practices, and/or customs, were moving forces behind, resulted in, were producing causes of, and were proximate causes of the referenced constitutional violations and damages suffered by Chris as a result.

1.      Constable Trevino Failed to Implement any Written Policies and/or Procedures

27.      Upon information and belief, Constable Trevino failed to implement any written policy and procedure manuals which included policies and/or procedures to be used by her deputies when performing law enforcement functions, including but not limited to apprehending suspects, making arrests, using weapons, using force, and/or serving warrants.  Plaintiff's counsel made a Public Information Act request to Constable Trevino on May 4, 2018.  Plaintiff's counsel received no response.  Plaintiff's counsel followed up on May 18, 2018, with a written letter, and May 25, 2018, with yet another written letter.  On June 1, 2018, Plaintiff's counsel sent yet another written letter to Constable Trevino.  In that letter, Plaintiff's counsel indicated that was his last attempt to obtain a response to his Public Information Act request before filing suit to force compliance with the Act.  Constable Trevino did not respond to that request either.

28.     Presumably, if Constable Trevino is a government official who complies with the Public Information Act, upon information and belief, she did not have any responsive documents. Such a failure to have any relevant policy and procedure manuals would show and demonstrate complete deliberate indifference to the health, safety, and needs of people within the jurisdiction of Harris County Constable Precinct 6. It would have been objectively unreasonable. If Constable Trevino, as the chief policymaker for deputies acting on behalf of Harris County through her precinct, had in place appropriate policies and procedures, she certainly would have produced them and likely been proud to show that through her policymaking ability she cares about those encountering law enforcement personnel who work for Harris County, under her authority. The failure to have such policies and procedures was a moving force behind the constitutional violations and damages suffered by Chris and referenced in this pleading.

    2.    Constable Trevino Failed to Appropriately Train and/or Supervise Deputy
          Garduno

29.     Further, upon information and belief, Harris County failed to appropriately train and/or supervise Deputy Garduno in the proper use of a Taser. All reasonable officers would know that an officer should not shoot a Taser into an unarmed suspect, who is not fleeing, is not a danger to others, and who has surrendered. It appears that Deputy Garduno did not receive any such training, because no written policies and/or procedures on behalf of Precinct 6 have been produced. It logically follows that, if there are no such written policies and/or procedures, there would have likewise been no training. The failure to have both policies and procedures and to appropriately train Deputy Garduno would be incompetence and, thus, deliberate indifference towards the rights, safety, and welfare of the people of Harris County. It would further be objectively unreasonable. The failure to provide such training was, upon information and belief, a moving force behind the constitutional violations and damages suffered by Chris and referenced in this pleading.

III.     Causes of Action

    A.     Cause of Action Against Arthur Simon Garduno Under 42 U.S.C. § 1983 for Violation of 4th Amendment Rights

    30.     In the alternative, without waiving any of the other causes of action pled herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein (including all factual allegations above) to the extent they are not inconsistent with the cause of action pled here, Defendant Arthur Simon Garduno is liable to the Plaintiff/Chris, pursuant to 42 U.S.C. § 1983, for violating Chris's rights guaranteed by the Fourth Amendment alone, and/or in addition and/or in the alternative as the Fourth Amendment has been incorporated to be applied to the states pursuant to the Fourteenth Amendment.  Deputy Garduno acted and failed to act under color of state law at all times referenced in this pleading.  Deputy Garduno was deliberately indifferent to Chris's constitutional rights, and he acted in an objectively unreasonable manner when seizing and using force with Chris.  He exercised constitutionally impermissible excessive force and seizure.  Deputy Garduno violated clearly established constitutional rights, and his conduct was objectively unreasonable in light of clearly established law at the time of the relevant incident.

    31.     It was clearly-established law, in the Fifth Circuit, at the time Deputy Garduno chose to shoot his Taser at Chris, that while use of a Taser is appropriate when a suspect continues to resist arrest, or continuously resists being handcuffed (particularly when it is not the first method to gain compliance) Tazing is not appropriate, and therefore patently unreasonable, if it is either unclear that a person is resisting, or a person is not resisting at all.  Further, it was, at the time, clearly-established law in the Fifth Circuit that a law enforcement officer's use of force is excessive when an officer strikes, punches, or violently slams a suspect who is not resisting arrest.  Use of a Taser is force well beyond striking or punching a person not resisting arrest and would thus be

unconstitutional excessive force and seizure.  Further, it was clearly established law at the time Deputy Garduno Tazed Chris that such Tazing should not occur if Chris was not accused of a serious crime, was not an immediate threat to the safety of law enforcement officers or others, and was not actively resisting arrest or attempting to evade arrest by flight.

32.    It should be undisputed that there is absolutely no factor or fact which cuts in favor of Deputy Garduno's chosen use of force in this case.  His use of force was clearly unreasonable, unconstitutional, and against clearly-established law.  There were also no exigent circumstances allowing Deputy Garduno to sue the force which he chose to use.  Therefore, Deputy Garduno is not entitled to qualified immunity.

33.    The Plaintiff seeks all remedies and damages available to Chris for Chris's 42 U.S.C. § 1983 claims.  The damages suffered by Chris were caused and/or proximately caused by Deputy Garduno, or in the alternative Deputy Garduno's conduct was a producing cause of Chris's damages.  Therefore, the Plaintiff seeks any and all legally-available damages for Chris including but not necessarily limited to the following:

- Past physical pain;

- Future physical pain;

- Past mental anguish;

- Future mental anguish;

- Past physical impairment;

- Future physical impairment;

- Medical and healthcare expenses incurred (paid plus owed) in the past;

- Medical and healthcare expenses that in reasonable probability will be incurred in the future;

- Past loss of earning capacity;

- Future loss of earning capacity;

- Past disfigurement;

- Future disfigurement; and

- exemplary/punitive damages.

Exemplary/punitive damages are appropriate in this case to deter and punish clear and unabashed violation of Chris's constitutional rights.   Deputy Garduno's actions and inaction showed a reckless or callous disregard of, or indifference to, Chris's rights. Deputy Garduno knew that there was a substantial risk of harm and injury to Chris when he chose to shoot the Taser, but he nevertheless proceeded with conscious indifference to Chris's rights, welfare, and safety. Moreover, the Plaintiff seeks reasonable and necessary attorneys' fees available pursuant to 42 U.S.C. §§ 1983 and 1988.

> B.   Cause of Action Against Harris County Under 42 U.S.C. § 1983 for Violation of 4th Amendment Rights

34.   In the alternative, without waiving any of the other causes of action pled herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein (including all factual allegations above) to the extent they are not inconsistent with the cause of action pled here, Defendant Harris County is liable to the Plaintiff/Chris, pursuant to 42 U.S.C. § 1983, for violating Chris's rights guaranteed by the Fourth Amendment alone, and/or in addition and/or in the alternative as the Fourth Amendment has been incorporated to apply to the states pursuant to the Fourteenth Amendment. Deputy Garduno was at all times referenced in this pleading acting in the course and scope of his duties of and for Harris County, and he was acting color of state law.  Harris County acted or failed to act under color of state law at all relevant times. Upon information and belief, Harris County's customs, practices,

and/or policies caused, were a proximate cause, and/or were a producing cause of Chris's damages. Resulting from unconstitutional excessive force and seizure.  Therefore, the Plaintiff seek any and all legally-available damages, including but not necessarily limited to the following:

- Past physical pain;

- Future physical pain;

- Past mental anguish;

- Future mental anguish;

- Past physical impairment;

- Future physical impairment;

- Medical and healthcare expenses incurred (paid plus owed) in the past;

- Medical and healthcare expenses that in reasonable probability will be incurred in the future;

- Past loss of earning capacity;

- Future loss of earning capacity;

- Past disfigurement; and

- Future disfigurement.

35.     Upon information and belief, Constable Silvia R. Trevino was the chief policymaker at all times relevant to this pleading, and she was the one that determined the customs, practices, and policies referenced herein.  The chief policymaker's failure to adopt, upon information and belief, policies referenced in this pleading, as well as her failure to stop customs, practices, and policies which developed and which are mentioned in this pleading, were intentional choices.  Thus, Harris County was deliberately indifferent to, and acted in an objectively unreasonably manner regarding, Chris's constitutional rights.  These customs, practices, and policies were moving forces behind the violation of the Plaintiff's rights, showed deliberate

indifference to the known or obvious consequences of constitutional violations, and were objectively unreasonable and resulted in objectively unreasonable actions by Deputy Garduno.

IV.     Concluding Allegations

    A.     Conditions Precedent

36.     All conditions precedent to assertion of the Plaintiff's claims have occurred.

    B.     Use of Documents

37.     The Plaintiff intends to use at one or more pretrial proceedings, in motion practice, and/or at trial all documents produced by the Defendants in this case in response to written discovery requests.

    C.     Jury Demand

38.     The Plaintiff demands a jury trial on all issues which may be tried to a jury.

    D.     Prayer

39.     For these reasons, the Plaintiff/Chris Henderson asks that the Defendants be cited to appear and answer, and that the Plaintiff/Chris Henderson have judgment for damages within the jurisdictional limits of the court and against the Defendants, jointly and severally, as legally applicable, for:

        a)     actual damages of and for the Plaintiff/Chris Henderson for including but not necessarily limited to the following:

- Past physical pain;

- Future physical pain;

- Past mental anguish;

- Future mental anguish;

- Past physical impairment;

- Future physical impairment;

- Medical and healthcare expenses incurred (paid plus owed) in the past;

- Medical and healthcare expenses that in reasonable probability will be incurred in the future;

- Past loss of earning capacity;

- Future loss of earning capacity;

- Past disfigurement; and

- Future disfigurement;

b)    exemplary/punitive damages from and against Deputy Garduno;

c)    reasonable and necessary attorneys' fees for the Plaintiff/Chris Henderson through trial and any appeals and other appellate proceedings, pursuant to 42 U.S.C. §§ 1983 and 1988;

d)    court costs and all other recoverable costs;

e)    prejudgment and postjudgment interest at the highest allowable rates;  and

f)    all other relief, legal and equitable, general and special, to which the Plaintiff/Chris Henderson is entitled.

Respectfully submitted,


_____/s/ T. Dean Malone_____
T. Dean Malone
Attorney-in-charge
Texas State Bar No. 24003265
Southern District of Texas Bar No. 37893
Law Offices of Dean Malone, P.C.
900 Jackson Street
Suite 730
Dallas, Texas 75202
Telephone:    (214) 670-9989
Telefax:          (214) 670-9904
dean@deanmalone.com

Of Counsel:

Michael T. O'Connor
Texas State Bar No. 24032922
Southern District of Texas Bar No. 37991
Law Offices of Dean Malone, P.C.
900 Jackson Street
Suite 730
Dallas, Texas 75202
Telephone:     (214) 670-9989
Telefax:           (214) 670-9904
michael.oconnor@deanmalone.com